**NELES–JAMESBURY, INC., Plaintiff,**

v.

**BILL'S VALVES and Vasilios "Bill" Kallergis, Defendants.**

Civil Action No. H–96–1419.

United States District Court,
S.D. Texas,
Houston Division.

May 30, 1997.

William C. Norvell, Jr., Beirne, Maynard and Parsons, Houston, TX, for plaintiff.

Anastassios Triantaphyllis, Houston, TX, for defendants.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Following a jury trial in this trademark infringement suit, the parties have filed several post-verdict motions. The Court has considered these motions, the responses and replies, all matters of record in this case, and the relevant authorities. For the reasons stated below, **Defendants' Motion for Judgment as a Matter of Law as to Conversion [Doc. # 179] is GRANTED; Plaintiff's Motion for Judgment for Enhanced Damages, a Finding of "Exceptional Case" Award of Reasonable Attorneys' Fees and Prejudgment Interest Under 15 U.S.C. § 1117(a) and (b) [Doc. # 174] is GRANTED IN PART; Defendants' Motion to Set Aside the $30,000 Award of [Future] Damages [Doc. # 182] is DENIED; and Plaintiff's Motion for the Release of Bond [Doc. # 178] is GRANTED.**

### I. PROCEDURAL BACKGROUND

Plaintiff Neles–Jamesbury, Inc. ("Plaintiff") brought this action against Bill's Valves,

Inc. and Vasilios Kallergis, the individual owner of Bill's Valves ("Defendants"), alleging trademark infringement, false advertising, and trademark dilution in violation of federal statutory law, 15 U.S.C. §§ 1114(1)(a) and 1125, and conversion and unfair competition in violation of state common law.[1] Following a one week trial, the jury returned a verdict finding that Defendants' conduct constituted trademark infringement, unfair competition, false advertising, and conversion. The jury found that Plaintiff was entitled to damages of $30,000.00 for future costs of product recall and advertising ("future damages") and $19,824.00 for general damages such as out-of-pocket expenses and injury to Plaintiff's goodwill or reputation ("past damages").[2] However, the jury found that Defendants did not infringe Plaintiff's trademark or engage in unfair competition or false advertising with wrongful intent. Therefore, in accordance with the Court's instructions, the jury did not award Plaintiff any of Defendants' net profits that may have been attributable to Defendants' wrongful conduct.[3]

The jury found that Defendants' conversion of Plaintiff's trademarks was willful but that their conduct which constituted unfair competition was not willful. Because it found that Defendants engaged in willful conduct, the jury assessed punitive damages of $100,000.00 against Bill's Valves, Inc. and $100,000.00 against Vasilios Kallergis. The jury did not find that Defendants willfully traded on Plaintiff's reputation or caused dilution of Plaintiff's trademarks.

1. Plaintiff originally named Valve Dynamics, Inc. and then its principals as additional defendants in this suit; Plaintiff settled its claims with this corporation (and affiliated individuals) prior to trial. *See* Order of Dismissal [Doc. # 151 ]. Pursuant to the Court's oral ruling at a pretrial conference held on February 14, 1997, Valve Dynamics, Inc. nevertheless remains in the style caption in this case. *See* Minute Entry Order [Doc. # 155].

2. Because the jury found that Plaintiff had incurred all of the past damages between May 2, 1994, and May 2, 1996 (the date on which Plaintiff filed this lawsuit), no statute of limitations issue is presented here. The jury did not award Plaintiff any damages for Plaintiff's lost profits.

3. Although the Lanham Act allows, upon a showing of infringement, recovery of (1) defendant's

## II. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO CONVERSION

In their Motion for Judgment as a Matter of Law [Doc. # 179], Defendants argue that Texas law does not recognize claims for conversion of a trademark.[4] In its Post-trial Brief in Support of the Jury's Finding of Conversion [Doc. # 177] and Response to Defendant's Motion [Doc. # 186], Plaintiff argues that Texas law allows claims for conversion of intangible property. The Court is not persuaded that Texas courts' recognition of claims for conversion of intangible property extends to trademarks. Plaintiff has not cited, and the Court is not aware of, any case in which a court has recognized, or a plaintiff has recovered on, a conversion claim in the context of trademark infringement. However, Defendants have cited cases in which federal district courts have refused to recognize such a claim. *See Liebowitz v. Maxwell*, 1994 WL 517456 (S.D.N.Y.1994) (dismissing claim for conversion of trademark rights under Maryland state law); *Financial Matters, Inc. v. Pepsico, Inc.*, No. 92–7497, 1993 WL 378844 (S.D.N.Y.1993) (dismissing claim for conversion of trademark rights under New York state law).

Conversion is the wrongful exercise of dominion or control over another's property to the exclusion of or inconsistent with the true owner's rights in the property. *See Amarillo National Bank v. Komatsu Zenoah America, Inc.*, 991 F.2d 273, 274 (5th Cir. 1993); *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex.App.—Texar-

profits; (2) plaintiff's damages; and (3) costs of the action, *see 15* U.S.C. § 1117(a), courts have generally required a showing of willful infringement before awarding defendant's profits. *See, e.g., Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1405–06 (9th Cir.1993); *Nalpac, Ltd. v. Corning Glass Works*, 784 F.2d 752, 755 (6th Cir.1986).

4. During the jury charge conferences, Defendants objected to the inclusion of instructions and an interrogatory regarding Plaintiff's conversion claim. Because the parties had not yet briefed the issue, the Court decided to include the conversion claim in the charge but warned Plaintiff that it strongly doubted that such a claim could be supported under Texas law.

kana 1996), *revd in part on other grounds*, 939 S.W.2d 146 (Tex.1997). In support of its argument that Texas law recognizes conversion claims involving intangible property, Plaintiff relies on cases in which Texas courts have recognized claims for conversion of lease documents, *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1983); confidential customer lists, *Deaton*, 926 S.W.2d 756; and stock certificates, *Watts v. Miles*, 597 S.W.2d 386, 387–88 (Tex.App.—San Antonio 1980, no writ).

■ The Court concludes that the cases cited by Plaintiff are materially different from the circumstances at bar. Plaintiff's cases each involved property that is intangible in the sense that it exists in the form of documents. In a recent case in this district, Judge Hittner examined the evolving tort of conversion and concluded that, although Texas law may recognize conversion of intangible property, this new development is limited to cases "where the underlying intangible right has been merged into a document" and "there has been conversion of such document." *Pebble Beach Co. v. Tour 18 I. Ltd.*, 942 F.Supp. 1513, 1569 (S.D.Tex.1996) (appeal pending) (citing *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1983); *Hurst v. Dezer/Reyes Corp.*, 82 F.3d 232, 236 (8th Cir.1996)).[5] In the case at bar, Plaintiff does not claim that Defendants converted any document representing Plaintiff's intangible rights. Therefore, the Court concludes that, under state common law, conversion does not apply to conduct regulated by the laws prohibiting trademark infringement.[6]

Unfortunately for Plaintiff, the Court's conclusion that Texas law does not recognize a claim of conversion of a trademark precludes the entry of punitive damages in this case. Because the federal causes of action do not provide for an award of punitive damages, *see* 15 U.S.C. § 1117, Plaintiff may recover punitive damages here only on its successful state law claims. In this action, Plaintiff's state law claims are unfair competition and conversion. In order for a plaintiff to recover punitive damages on a claim, the factfinder must find that the defendant acted willfully. Because the jury did not find that Defendants willfully engaged in unfair competition and because the Court must grant Defendants' Motion for Judgment as a Matter of Law as to conversion, the Court cannot enter judgment on the jury's punitive damage award.

### III. PLAINTIFF'S MOTION FOR JUDGMENT FOR ENHANCED DAMAGES

Plaintiff requests that this Court enter a judgment enhancing the jury's award of damages, pursuant to 15 U.S.C. § 1117(a) and (b) [Doc. # 174]. However, because the jury found that Defendants did not wrongfully intend to infringe Plaintiff's trademarks or engage in unfair competition and false advertising, only § 1117(a) applies to this case.[7]

Section 1117(a) provides that

In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

In its Motion, Plaintiff argues at length why the circumstances of this case justify enhanced damages. Plaintiff contends that § 1117(a) authorizes the Court to determine, in its own discretion, whether damages should be trebled. Despite the Fifth Cir-

---

**5.** Following a bench trial, Judge Hittner found the defendant liable for service mark infringement, trade dress infringement, and unfair competition but refused to allow a conversion claim for the defendants' videotaping the plaintiffs' trade dress.

**6.** Plaintiff argues extensively, in support of its state law conversion claim, that the federal Lanham Act does not preempt state law. However, as Defendants point out, no preemption issue is even raised if state law does not recognize a conversion claim in the first place. Thus the Court need not address Plaintiff's preemption analysis.

**7.** Section 1117(b) mandates that a court enter judgment for three times the plaintiff's damages or the defendant's profits in cases of intentional infringement. *See infra* note 14 for a more detailed discussion of the Court's decision to apply § 1117(a) in this case and not § 1117(b).

cuit's indication that damages should be enhanced under this provision only in cases involving "willful and deliberate conduct," *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113 (5th Cir.1991), *cert. granted and aff'd. on other grounds*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), Plaintiff argues that the Court is not bound by the jury's assessment of Defendants' intent.

■ The Court finds, based on the evidence presented at trial, that Defendants in this case engaged in reckless conduct in disregard of Plaintiff's rights. *See infra* Section IV.A. However, since the language of § 1117(a) mandates that the Court's damage enhancement "shall constitute compensation and not a penalty," the Court determines it would be inappropriate to enhance Plaintiff's damages. In *Taco Cabana*, the Fifth Circuit interpreted this provision of § 1117(a) as follows:

> It is anomalous to say that an enhancement of damages, which implies an award exceeding the amount found "compensatory," must be "compensatory" and not "punitive." Responding to that anomaly, we have suggested that enhancement could, consistent with the "principles of equity" promoted in [the statute], provide proper redress to an otherwise under compensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct.

932 F.2d at 1127. Based on "evidence of substantial damages not reflected in the jury award," the Fifth Circuit affirmed the district court's decision to double the plaintiff's damages. *Id.* In the case at bar, however, the Court does not find that there was evidence of damages that the jury did not include in its verdict. On the contrary, the Court concludes that the evidence supports the jury's decision that Plaintiff suffered $19,824.00 in past damages and will suffer $30,000.00 in future damages.[8] Therefore, the Court declines Plaintiff's request for enhancement and will instead enter judgment for the amount of damages that the jury found was incurred.[9] In addition, because § 1117(a) does not provide for an award of prejudgment interest, Plaintiff's request for prejudgment interest is denied.[10]

## IV. PLAINTIFF'S MOTION FOR A FINDING OF "EXCEPTIONAL CASE" AWARD OF REASONABLE ATTORNEYS' FEES

### A. Plaintiff's Right to Attorneys' Fees

Plaintiff requests that this Court award Plaintiff its attorneys' fees and prejudgment interest, pursuant to 15 U.S.C. § 1117(a) and (b) [Doc. # 174]. However, because the jury found that Defendants did not wrongfully intend to infringe Plaintiff's trademarks or engage in unfair competition and false advertising, the Court applies only § 1117(a). Section 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[11]

Plaintiff argues that Defendants' conduct throughout this litigation[12] and the fact that the jury found willfulness, albeit only on the conversion claim, warrants the award of at-

**8.** The Court concludes that Plaintiff's proof of damages was sufficiently precise for the jury to render a legally viable verdict. In any case, there is no indication that any imprecision was a result of Defendants' conduct. At trial, Plaintiff argued that it should not be penalized for Defendants' use of imprecise accounting procedures but raised this argument only with respect to Plaintiff's potential recovery of Defendants' net profits. However, since the jury did not find wrongful intent and therefore, in accordance with the Court's instructions, did not make an award of Defendants' profits, *see supra* note 3, the issue of Defendants' accounting procedures became immaterial. For a brief discussion of the propriety of the jury's $30,000.00 future damage award, *see infra* Section V.

**9.** The Court denies Defendants' request for a reduction of the judgment to account for Plain-

tiff's settlement with Valve Dynamics, Inc. See Response [Doc. # 181], at 24. Defendants have not provided any evidence that this settlement was in partial satisfaction of the claims tried before the Court. In addition, Defendants have not shown that they were joint tortfeasors with Valve Dynamics, Inc.

**10.** Section 1117(b), but not § 1117(a), allows a court, in its discretion, to award prejudgment interest.

**11.** Section 1117(b) mandates the award of attorneys' fees in cases of intentional infringement.

**12.** Plaintiff asserts a laundry list of grievances against Defendant's counsel in this case. *See* Plaintiff's Motion [Doc.# 174], at 11–14.

torneys' fees. In particular, Plaintiff contends that the case is exceptional because, notwithstanding the jury's verdict with respect to intent, Defendant Kallergis admitted knowledge that Bill's Valves was acting in violation of Plaintiff's rights by not marking Plaintiff's valves as reconditioned. Defendants argue that this is not an exceptional case because the jury did not find intentional infringement.

The Fifth Circuit has held that, for the purposes of § 1117(a), an "exceptional case is one where the violative acts can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1390 (5th Cir.1996). *See also Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 492 (5th Cir.1992) (exceptional case requires a "showing of a high degree Of culpability on the part of the infringer, for example, bad faith or fraud"). However, the statute does not limit the Court, in making this finding, to considering only the jury's decision regarding the defendant's intent to infringe. In *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir.1992), the Fifth Circuit stated that "[a] jury finding of willfulness does not bind the trial court in determining whether this case is 'exceptional'; it may however, serve as a guide." *See also Seven–Up*, 86 F.3d at 1390 ("[t]he determination as to whether a case is exceptional is left to the sound discretion of the trial court").

 In this case, the Court has conducted an independent examination of the testimony and other evidence presented at trial, including observation of the witnesses' words, demeanor, and candor; counsel's pretrial admissions; and Kallergis' personal shifting explanations for the lack of markings on the reconditioned valves. The Court concludes that Defendant Bill's Valves and Kallergis acted in bad faith and with reckless disregard of Plaintiff's rights. Defendants ignored their responsibilities to learn, understand, and adhere to policies to avoid infringing Plaintiff's trademark. By his own admission, Kallergis knew that he should have required his employees to stamp Plaintiff's valves as reconditioned. However, Kallergis made, at best, only the most superficial attempt to ensure that his employees would carry out their duties in this regard. At trial, he had only vague and inadequate explanations as to why he and his employees did not consistently apply the markings. His explanations were simply that he did not have control over whether his employees stamped the valves and that "we forgot sometimes." Deposition of Vasilios Kallergis, Exhibit D to Plaintiff's Motion for Summary Judgment Against Bill's Valves [Doc. # 36], at 131; Trial Testimony of Vasilios Kallergis; Trial Testimony of Nikolos Kallergis, Jr. The jury's award to Plaintiff of $200,000.00 in punitive damages on the conversion claim supports the Court's conclusion that this is an exceptional case.[13] Thus, the Court finds that an award of reasonable attorneys' fees is appropriate here.[14]

**13.** The jury found that Defendants had acted willfully, but because the jury ascribed the willfulness to the conversion claim, these damages are not sustainable as a matter of law. *See supra* Section II.

**14.** Even though the Court concludes that Defendants' conduct constituted "bad faith" and "reckless disregard" of Plaintiff's rights, in light of the jury's finding that Defendants did not "wrongfully intend" to infringe Plaintiff's trademark the Court applies § 1117(a), and not § 1117(b), in determining the appropriate judgment to enter against Defendants. The Court does not read the Fifth Circuit's requirement in *Seven–Up* that an exceptional case be characterized by conduct that is " 'malicious,' 'fraudulent,' 'deliberate,' or 'willful,' " 86 F.3d at 1390 (a requirement that the Fifth Circuit found in the statute's legislative history, *see Moore*, 960 F.2d at 491 (quoting S.Rep. No. 1400, 93rd Cong., 2d

Sess., *reprinted in* U.S.Code Cong. & Admin.News 7132, 7133 (1974))), to mean that an exceptional case requires *intentional infringement*. If a defendant's infringement must be intentional in order to create an "exceptional case," then the "exceptional case" provision of § 1117(a) would be meaningless—since a finding of intentional infringement would trigger the application of § 1117(b).

The Eleventh Circuit noted this point in *Chanel, Inc. v. Italian Activewear of Florida*, 931 F.2d 1472, 1476 (11th Cir.1991), when it concluded that "[t]he interplay of[§ 1117(a) and § 1117(b)] demonstrates that a showing of intent or bad faith is unnecessary to . . . seek remedies pursuant to § 1117(a)." However, because the Fifth Circuit has rejected *Chanel* in part by holding that an exceptional case requires a "showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud," *Moore*, 960 F.2d at 492, 492 n. 2, this Court

## B. Calculation of Attorneys' Fees

Plaintiff seeks to recover fees and expenses from Defendants in the sum of $416,-777.07. This sum reflects a voluntary $40,-000 "lodestar" reduction and a 25% reduction from the total fees and expenses of $609,-681.51, incurred by Plaintiff as of February 28, 1997. Plaintiff reports that fees alone were $549,905.50, representing 2,214.20 hours of attorney and law clerk time, 1,698.20 hours of paralegal time, plus expenses through February 28, 1997, of $59,776.01. Plaintiff argues that its proposed reductions, equalling $192,904.44, are sufficient to account for the fees attributable to the settling Defendants.[15]

Defendants have not raised specific objections to Plaintiff's fee calculations but instead have only argued that this is not an "exceptional" case and that no fees should be assessed against them at all. For reasons

discussed *supra* Section IV.A., the Court rejects this argument. Thus, the Court must analyze the reasonableness of the fees sought by Plaintiff.

■ Because § 1117 does not provide for recovery of expenses, the Court denies Plaintiff's request for expenses. Section 1117(a) allows recovery for "the costs of the action." In the absence of any authorities or argument by Plaintiff to the contrary, the Court interprets this provision for costs to allow for the recovery only of court costs as provided in 28 U.S.C. §§ 1920, 1924.[16]

■ *Legal Standard.*— The Fifth Circuit uses the "lodestar method" to calculate attorneys' fees. Under this method,

[i]nitially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating lawyer.

reconciles the Fifth Circuit authority with the structure of § 1117(a) and § 1117(b) by interpreting an "exceptional case" under § 1117(a) to require bad faith but not intentional infringement. In other words, the Court finds Defendants' conduct in this case to rise to a level just short of intentional infringement but with enough bad faith to qualify as an exceptional case. The Court's conclusion that Defendants' conduct fell somewhere between bad faith and intentional infringement is supported by the jury's finding that (1) Defendants did not wrongfully intend to infringe Plaintiff's trademark; (2) Defendants did not willfully engage in unfair competition; but (3) Defendants did willfully commit conversion; and (4) Defendants should be liable for substantial punitive damages.

However, in the alternative, if the Court's finding that Defendants engaged in reckless conduct and bad faith were to mandate the application of § 1117(b), the Court concludes that, even under § 1117(b), Plaintiff is not entitled to enhancement of damages but is entitled to an award of reasonable attorneys' fees. Section 1117(b) provides that the Court "shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages ... together with a reasonable attorney's fee." In this case, the Court finds that there are extenuating circumstances which mitigate against enhancing Plaintiff's damages. Bill's Valves is a small family-owned business that is unlikely to be able to satisfy a substantial damage award as well as the award of attorneys' fees that the Court finds appropriate here. The jury's finding that Defendants did not "wrongfully intend" to infringe Plaintiff's trademark supports the Court's conclusion that, if the Court must apply § 1117(b) in

entering a final judgment, this case raises an extenuating circumstance that precludes enhancement of Plaintiff's damages.

15. Plaintiff does not explain the reason for this "lodestar" reduction.

16. With respect to Plaintiff's bill of costs, Defendants first object to Plaintiff's request for costs of videotaping depositions. The Court agrees that in *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir.1993), the Fifth Circuit held that "video technician fees incurred for video depositions" are not recoverable under 28 U.S.C. § 1920.

Second, Defendants argue that Plaintiff has not met its burden of proving that its copying costs were necessarily obtained for use in this litigation. When Plaintiff seeks to have its costs taxed against Defendants by the clerk of the court, Plaintiff will have to meet the standard set out in *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir.1991):

[R]eproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party demonstrates that necessity.... While we certainly do not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation.... [Defendants] should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines.

The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. The district court may then adjust the lodestar upward or downward depending on the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

*Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir.1996) (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995)) (internal citations omitted).

> "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant ... should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."... Accordingly, the documentation must be sufficient for the court to verify that the applicant has met its burden.... Failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours.

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324–25 (5th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995) (citations omitted).[17] The adjustment of the lodestar involves assessment of a dozen factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974):

1. The time and labor required;
2. The novelty and difficulty of the questions presented;
3. The skill requisite to properly perform the legal services;
4. Preclusion of other employment by the attorney due to acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. Time limitations imposed by the client;
8. The amount involved and the results obtained;
9. The expertise, reputation and ability of attorneys;
10. The undesirability of the case;
11. The nature and length of the professional relationship with the client;
12. Awards in similar cases.

*Id.* at 329.

The two-step analysis and consideration of the twelve *Johnson* factors follows. A determination of the lodestar is set forth as part of the Court's discussion of the first *Johnson* factor. The Court notes that a district court's *Johnson* analysis need not be "meticulously detailed," and that " '[i]f the district court has articulated and clearly applied the criteria ..., we will not require the trial court's findings to be so excrutiatingly explicit in this area of minutiae that decisions of fee award consume more paper than did the cases from which they arose.' " *Forbush*, 98 F.3d at 823 (quoting *Louisiana Power & Light Co.*, 50 F.3d at 331).

■ *Analysis of Plaintiff's Fee Request.*—The Court makes the following findings as to the lodestar and the *Johnson* factors:

### 1. *The Time and Labor Required.*

First, the Court will address generally the time and labor required in this case. Then, the Court will analyze the necessity of the work in the four phases of this case, as proposed by Plaintiff. The Court has engaged in a detailed analysis of the materials submitted by Plaintiff's outside counsel, the

---

**17.** The Fifth Circuit in *Louisiana Power* reduced certain attorneys' fees by 10% for inadequate documentation and refused to permit compensation for another attorney. 50 F.3d at 326. However, the Court recognized that even though other entries before it "border[ed] on inadequacy as a matter of law," the court was "mindful that practical considerations of daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." The court also recognized that, "in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry." *Id.* at 327. Nevertheless, the Court added that "attorneys who anticipate applying for reimbursement of fees should endeavor to be less terse." *Id.*

law firm of Beime, Maynard & Parsons, L.L.P. and co-counsel, R. Mark Petersen, a Massachusetts attorney. While the materials are substantial and somewhat detailed, the Court is unpersuaded that the request for more than $460,000.00 in fees and expenses is justified in this case. Many of the fees requested were incurred by attorneys and legal assistants for which no background information is provided.[18] To the extent an attorney has not been identified, his or her time is not compensable since it has not been demonstrated to be reasonable in this case and billed at a customary rate. Additionally, many of the hours were expended on the litigation in relation solely to the claims against settling Defendants Valve Dynamics, Inc. and its principals.

In addition, the firm's invoices and the fee application establish an atypical allocation of work. Mr. Norvell, the senior partner, spent 674 hours on this file, and Mr. Marrs, another partner of the firm, devoted approximately 709 hours. As for associate time, Mr. Morris worked 266 hours, and Mr. Soh worked approximately 209 hours. Thus, the work of the senior partner (with a billing rate of $275.00 to $290.00 per hour) and a junior partner (with a billing rate of $165.00 per hour) constitute the vast majority of the time billed in this file. This work allocation has not been justified. Particularly after Plaintiff obtained temporary restraining orders, which required expedited attention, there was little need for a rush to a jury trial.

The fees sought for the work of R. Mark Petersen, who serves, according to oral pretrial representations by Plaintiff's lead counsel, as "in-house counsel" for Neles–Jamesbury, are not compensable. Mr. Petersen's tasks consisted of monitoring the work of Beirne, Maynard & Parsons, L.L.P., trial counsel. Mr. Petersen's time also was spent on telephone conferences and review of pleadings and other matters filed of record. Accordingly, Mr. Petersen's work was duplicative of trial counsel's services. Equally importantly, in-house counsel's work generally is part of a client's overhead, not a reasonable attorney's fee to be awarded to the prevailing party and paid by the losing party in litigation. Therefore, Mr. Petersen's billings are not recoverable from Bill's Valves in this case.

As to the rates charges by the Beirne, Maynard & Parson's attorneys, Mr. Norvell's rate of $275.00–$290.00 per hour appears reasonable for his level of expertise, his experience, and standing in the bar. There is no information as to Mr. Marrs with respect to his experience, qualifications, or expertise in intellectual property or litigation. Nevertheless, the Court finds that Mr. Marrs' rate of $165.00 per hour is reasonable in light of his performance throughout this case at conferences and during trial.

However, the Court has been presented with no information about the experience, qualifications, and expertise of Mr. Morris or Mr. Soh in intellectual property or litigation, other than the fact that they are, respectively, fifth and first year associates of the firm. The work of Mr. Morris, a fifth year associate, is billed at $165.00 per hour, a partner's billing rate. This rate is inconsistent with ordinary law firm practice and there has been provided no explanation. Therefore, Mr. Morris' rate will be cut to $140.00 per hour.[19]

### a. Phase One—The Commencement of Lawsuit Through Preliminary Injunction Hearing (3/1/96 through 5/31/96)

During the first phase of the lawsuit, Plaintiff incurred $176,967.00 in fees [20] in

---

18. The application describes only the following attorneys: William C. Norvell, Jr. is a partner in the law firm of Beime, Maynard & Parsons, L.L.P., who has practiced intellectual property law for more than 25 years. Scott Marrs is a partner with the firm, but his experience level is not disclosed. Bruce Morris is a fifth year associate at the firm. Kenneth Soh is a first year associate with the firm. In addition, Plaintiff seeks recovery of fees incurred from work by R. Mark Petersen, listed as "counsel for Neles–Jamesbury" and an attorney licensed to practice law in the state of Massachusetts. No legal assistants' qualifications or experience are described.

19. Typically, the Court receives copies of resumes or summaries of the qualifications of attorneys involved in the litigation, as well as information regarding the individuals' litigation skills generally. In this case, no such information has been provided. Moreover, for a period of several months, the summary of the total hours and fees attributable to each attorney has been redacted. The Court has therefore added up the hours reflected in the billing memos, a task the Court should not have been required to undertake.

connection with filing suit and obtaining a preliminary injunction against Defendant Valve Dynamics. The fees attributable to the identified attorneys and all legal assistants at the rates deemed by the Court to be compensable were $129,736.00, as set forth in the Table entitled "Phase One Request," which appears in Appendix I to this Memorandum and Order. The Court finds that recovery of all these fees against Bill's Valves would be unreasonable, both because of the amount of time spent by senior partner Mr. Norvell, instead of less expensive attorneys, and because a material part of the fees were incurred against settling Defendants. After a detailed review of the records submitted by Plaintiff, the Court finds that 50% of the fees incurred in Phase One by the four attorneys identified in the fee application and the legal assistants from Beirne, Maynard & Parsons, L.L.P., is compensable from Bill's Valves.[21] The Court sets forth in the Table entitled "Award for Phase One" in Appendix II to this Memorandum and Order the hours and fees that are recoverable for work performed in Phase One of this case.[22]

b. *Phase Two—The Discovery Phase Through Filing of Plaintiff's Motion for Summary Judgment and Joint Case Management Plan (6/1/96 through 8/30/96 )*

During the second phase of the lawsuit, Plaintiff incurred $105,877.50 in attorneys' fees.[23] The work by the four identified attorneys resulted in fees of $74,294.50, as set forth in the Table entitled "Phase Two Request," which appears in Appendix I to this Memorandum and Order. The firm, on behalf of Plaintiff, engaged in discovery with both Valve Dynamics and Bill's Valves during this phase. This discovery was in large part needed for trial against Bill's Valves.

Plaintiff's counsel also states in its application that "due to voluminous documents seized from the Defendants' premises, the cataloguing process of these documents was still ongoing." However, Plaintiff has failed to demonstrate to the Court (and the Court remains unconvinced of) the value of much of this "cataloguing process." Thus, Plaintiff has failed to justify a substantial portion of the legal assistants' time during Phase Two. Moreover, counsel failed to provide identification of legal assistants or totals of the fees attributable to their work. Therefore, no legal assistant fees will be allowed for Phase Two.

During Phase Two, counsel also prepared Plaintiff's Motions for Summary Judgment (and various associated documents) against both groups of Defendants, prepared Rule 26 report requirements, and responded to Valve Dynamics' motion to dismiss and Bill's Valve's motion for a continuance. Plaintiff prevailed on certain subsidiary motions, but its motions for summary judgment were denied as to all Defendants, based on Fifth Circuit authority, despite the arguments propounded by Plaintiff based on other Circuits' cases. This unusual pretrial motion (for

---

20. Plaintiff also incurred $18,111.04 in expenses during this phase, which is not recoverable, except insofar as it is recoverable under 28 U.S.C. §§ 1920, 1924.

21. This analysis is directed to the fees originally invoiced to the clients. The voluntary reductions by Plaintiff of $192,000 could be construed as applicable largely against this Phase and Phase Two's work. However, there is no explanation or allocation by Plaintiff in the application for its proposed reduction.

22. The invoices submitted to the Court by Plaintiff reveal that Mr. Norvell's billing rate was $275.00 per hour during the first three periods. The legal assistants expended 612 hours during this period. There were no less than 12 legal assistants that worked on this file. This vast array of legal assistants' time inevitably resulted in duplication of effort, wasted time, and was inefficient because different individuals had to learn the necessary background of the case. Plaintiff has provided no explanation for this staffing. Therefore, only 50% of this time will be awarded.

The legal assistants' services were rendered at rates varying from $55.00 to $75.00 per hour. The Court finds that a rate of $62.00 per hour is reasonable during this period and all of the compensable hours will be awarded at that rate, since there has been no breakdown as to the skill levels of the various legal assistants to justify different rates. Also, $62.00 per hour is a reasonable blended rate for legal assistants' services in the Houston marketplace in this Court's experience.

23. Plaintiff also incurred $16,225.17 in expenses during this phase, which is not recoverable, except insofar as it is recoverable under 28 U.S.C. §§ 1920, 1924.

summary judgment in favor of Plaintiff), was not a required litigation step. Nevertheless, the legal research performed for the motion served to educate the Court's various issues during trial.

In sum, the Court finds that not all the Phase Two work by the identified was necessary and non-duplicative. The Court concludes that 60% of the work performed by the identified attorneys during Phase Two is recoverable as reasonable time and labor for the services required. *See* Table entitled "Award for Phase Two" in Appendix II to this Memorandum and Order.

### c. Phase Three—The Rule 26 Disclosures Through the First Mediation (9/1/96 through 12/31/96)

Plaintiff seeks recovery of $91,542.26 in fees for Phase Three.[24] The work performed during this phase consisted of motion practice, much of which pertained to Valve Dynamics; preparation for the initial pretrial conference and related exchange of information and documents with all Defendants, pursuant to Fed.R.Civ.P. 26; amendments to pleadings by Plaintiff, depositions of experts of Defendants, and supplementation of interrogatory responses; Plaintiff's requests for sanctions against Defendants; and participation in a mediation session.[25] Plaintiff also obtained leave and then filed a Motion to Strike Affirmative Defenses as to each Defendant. The letter motions were necessary to narrow the issues for trial. Fees for the time devoted to this litigation by attorneys Norvell, Marrs, Morris, and Soh, plus legal assistants, totalled $67,465.45.[26] *See* "Phase Three Request" Table in Appendix I hereto. Although this time largely was productive and did not appear to contain unnecessary duplication, there was substantial work per-

formed that related only to Valve Dynamics Defendants. Therefore, the Court finds that 50% of all the requested fees is reasonable and necessary for the work performed relating to Bill's Valves. *See* Table entitled "Award for Phase Three" in Appendix II hereto.

### d. Phase Four—Pretrial Order, Pretrial Preparation and Trial (1/1/97 through 2/28/97)

In Phase Four, Plaintiff incurred $188,185.00 in fees in connection with its counsel's preparation of the pretrial order, attending a second mediation, and preparation of jury instructions, voir dire questions, trial memoranda of law, other preparation for trial, and attendance and participation at trial.[27] The identified attorneys and legal assistants accounted for $141,694.50 of this time. *See* Appendix I, "Phase Four Request" Table. The Court finds that 25% of the time spent in January 1997 by these counsel and legal assistants was on work relating principally to Valve Dynamics and the other settling Defendants. In February, however, the identified attorneys prepared for and participated in trial. The Court finds that all of the fees incurred by these four attorneys in February was required and reasonable, except time spent on public relations matters done posttrial on February 25 and 26.[28] *See* Table entitled "Award for Phase Four," Appendix II.

### 2. Novelty and Difficulty of Questions Presented.

The Court finds that the issues that were novel in this case related to the liability of Valve Dynamics. The claims, as they related to Bill's Valves, raised no new legal ques-

---

**24.** Plaintiff also incurred $8,566.77 in expenses during this phase, which is not recoverable, except insofar as it is recoverable under 28 U.S.C. §§ 1920, 1924.

**25.** Plaintiff's counsel also met with the Federal Bureau of Investigation, a task clearly not compensable from Defendants.

**26.** Because the firm relied on only a small number of such individuals in Phase Three, and thus obtained the benefit of their knowledge of the facts of this case, the tasks assigned to legal assistants appeared reasonable in this phase.

**27.** Plaintiff also incurred $12,773.54 in expenses during this phase, which is not recoverable, except insofar as it is recoverable under 28 U.S.C. § § 1920, 1924.

**28.** The Court must estimate the time spent in this regard since the notations are embedded in paragraphs of descriptions of services for other reasonably billable matters. The Court finds that five hours of Mr. Marrs' time is not compensable during this period for these reasons. Other than those hours, all fees for time billed by Messrs. Norvell, Marts, Morris, and Soh are recoverable and will be allowed.

tions. Indeed, the issues involving Bill's Valves were comparable to any ordinary trademark case and trial preparation. With respect to Plaintiff's work on its claims against Bill's Valves and Kallergis, the difficulty, if any, involved Bill's Valves' counsel's early inattention to this case. However, this circumstance did not make the claims against Bill's Valves more novel. To the extent that Bill's Valves raised defenses or affirmative defenses that were not colorable as a matter of law, the Court has included compensation for the time reasonably spent.

### 3. Skill Requisite to Properly Perform the Legal Services.

This case required both trial skills and understanding of trademark, anti-dilution, and state tort law. Based on observation of the performance of counsel during this case, including trial, the Court finds that the four lawyers for whom Plaintiff seeks compensation possess the skill required for proper performance of the legal services rendered here. These lawyers performed legal research which assisted the Court, to the extent the issues were novel or needed updating.

### 4. Preclusion of Other Employment by the Attorney.

This does not appear to be a factor in counsel's analysis or request.

### 5. Customary Fee.

The Court finds that there is no pattern or "customary fee." The fees in this case that the Court finds appropriate are awarded based on the quality and quantity of the necessary work. Trademark cases are too varied to have a customary fee or to develop a pattern for fee requests.

### 6. Whether the Fee is Fixed or Contingent.

The fees sought are fixed and billed on a hourly basis. This factor thus is inapplicable to the analysis in this case.

**29.** Indeed, Plaintiff's apparent insistence on Defendants' agreement to numerous details as to operation of their businesses precluded the voluntary settlement of the permanent injunctive matters.

### 7. Time Limitations Imposed by the Client.

Time limitations existed early in this case, arising from understandable concerns by Plaintiff that the reconditioned valves' sold by Bill's Valves and Valve Dynamics would fail and thus cause bodily injury or property damage. While counsel were under some time pressures initially to obtain information concerning the Defendants in order to obtain an injunction against further sales of the reconditioned valves, the time crunch ended early in the litigation upon the Court's granting of a temporary restraining order against Valve Dynamics and thereafter agreed preliminary injunctions against Valve Dynamics and Bill's Valves, preventing the sale of reconditioned Neles–Jamesbury valves. Moreover, Plaintiff's argument about the need for accelerated prosecution of this case was undercut by the fact that counsel did not seek leave to communicate with most of the ultimate purchasers of the reconditioned valves to determine if the applications of the valves in fact presented safety concerns, even after Plaintiff apparently was aware of those valves' locations. Thus, after Phase One, the Court does not deem any time limitation imposed by the client to have been a serious factor.

The Court acknowledges, however, that this case moved expeditiously largely at Plaintiff's request, having been tried less than twelve months from the date of filing. There is no indication, however, that the necessity for quick case preparation increased the amount of work for counsel to prepare properly for trial over the work that otherwise would have been necessary.[29] The billing memos do not reflect any unusual time commitments by counsel, even in the early phases of this case.

### 8. The Amount Involved and the Results Obtained.

It was clear from the outset that the amount of actual, provable damages (other than attorneys' and litigation expenses fees) incurred in this case was small.[30]

**30.** Additionally, Defendants do not appear to have assets that could be used to respond to a judgment, outside possible insurance proceeds.

The results obtained at trial by plaintiff were favorable in that Plaintiff recovered from the jury all the past damages it sought, less than $20,000. Legally, Plaintiff obtained a finding from the jury that Bill's Valves and Kallergis violated the trademark laws and committed the tort of conversion,[31] and the Court holds this is an "exceptional" case under 28 U.S.C. § 1117(a) based on Defendant's bad faith and reckless disregard for Defendant's trademark rights. The Court views the results Plaintiff obtained to be a strong factor favoring Plaintiff's recovery of reasonable attorneys' fees and costs as typically allowed by law.

### 9. The Expertise, Reputation, and Ability of Attorneys.

The attorneys in this case possessed appropriate levels of expertise. Mr. Norvell is obviously very conversant and experienced in trademark and intellectual property litigation. Mr. Marrs and Mr. Morris also appeared to be appropriately skilled for the tasks assigned. The reputation of the firm in general and Mr. Norvell in particular is excellent in the area of intellectual property. The reputation of the other lawyers is not a matter of record. Finally, the Court finds that the courtroom performance and ability of counsel was above average and in some instances excellent. Plaintiff's attorneys' abilities assisted the Court generally.[32]

### 10. Undesirability of the Case.

This factor is inapplicable.

### 11. The Nature and Length of Professional Relationship With Client.

It appears that the firm has represented this client in at least one other substantial litigation. However, this factor does not favor an increase or a decrease in the fees to be awarded.

### 12. Awards in Similar Cases.

As noted above in regard to a "customary fee," the awards in other cases do not provide material guidance to this Court, since each case is *sui generis*.

### Conclusion As To Fees

Therefore, the Court concludes, after applying the *Johnson* factors, that the lodestar (total hours billed multiplied by the attorneys' respective billing rates) results, in fees that are appropriate in this case and constitutes an award of a total of $273,544.03, which is the sum of the fees set forth in Appendix II hereto. Although this is a substantial reduction in the fees requested, this sum reflects billings for work reasonably necessary given all the circumstances of this case.

## V. DEFENDANT'S MOTION TO SET ASIDE THE $30,000 AWARD OF [FUTURE] DAMAGES

In this Motion [Doc. # 182] to set aside the $30,000 award of damages, Defendants argue that Plaintiff did not present sufficient evidence to support an award for future damages. In response, Plaintiff claims that Defendants waived this objection by not raising it at any of the jury charge conferences. Defendants also argue that the jury had no basis for awarding an amount between $0 and $100,000.00, since Plaintiff presented evidence that its future costs of product recall and advertising would total $100,000.00.

The Court denies Defendants' Motion. The evidence presented at trial supports the jury's finding that Plaintiff overestimated the realistic amount of its future costs necessitated by Defendants' conduct, and that a reasonable award for Plaintiff's future costs is $30,000.00. The jury received only generalized estimates of several types of future damages. The jury was entitled to find that only a percentage of those costs would actually be incurred. *See Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994) (court should "sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be con-

---

31. The Court nevertheless concludes that no such claim is cognizable under Texas law under the circumstances presented. *See supra* Section II.

32. The concerns expressed in pretrial conferences to counsel for Plaintiff related to unnecessary litigation or acrimony, which the Court perceives increased the number of hours necessary to prosecute and complete this case adequately. The impact of these factors has been addressed above in discussions of other factors.

trary to right reason"); *Barrajas v. VIA Metropolitan Transit Authority,* 945 S.W.2d 207, 209–10 (Tex.App.—San Antonio 1997) (upholding future damages for an amount less than Plaintiff attempted to prove, explaining that "[t]he jury could ... choose to be guided or not by the testimony on the amount of damages").

## VI. *PLAINTIFF'S MOTION FOR THE RELEASE OF BOND*

Plaintiff has moved for the release of the two bonds which it posted in consideration of the Court's issuance of Temporary Restraining Orders against Defendants and Valve Dynamics, Inc. [Doc. # 178]. *See* Exhibits A and B to Plaintiff's Motion for the Release of Bond. Defendants do not oppose this Motion. *See* Defendants' Response [Doc. # 180]. In light of Plaintiff's settlement with Valve Dynamics, the Court presumes that the Valve Dynamics Defendants also do not oppose this Motion. Accordingly, Plaintiff's bonds are released.

## VII. *CONCLUSION*

For the foregoing reasons, it is

**ORDERED** that **Defendant's Motion for Judgment as a Matter of Law as to Conversion** [Doc. # 179] is **GRANTED.** It is further

**ORDERED** that **Plaintiff's Motion for Judgment for Enhanced Damages, a Finding of "Exceptional Case" Award of Reasonable Attorneys' Fees and Prejudgment Interest Under 15 U.S.C. § 1117(a) and (b)** [Doc. # 174] is **GRANTED IN PART** in accordance with this Memorandum and Order. The Court will not enhance the damages awarded by the jury. However, based on the Court's finding that this is an exceptional case, the Court awards Plaintiff reasonable attorneys' fees of $273,544.03. It is further

**ORDERED** that **Defendant's Motion to Set Aside the $30,000 Award of [Future] Damages** [Doc. # 182] is **DENIED.** It is further

**ORDERED** that **Plaintiff's Motion for the Release of Bond** [Doc. # 178] is **GRANTED.** Therefore, (i) Neles–Jamesbury and Universal Surety of America are released from all liability under Bond # TX248149000 in the amount of $10,000, which was posted as security for the issuance of a temporary restraining order against Bill's Valves, Inc., and (ii) Neles–Jamesbury and Universal Surety of America are released from all liability under Bond # TX248148800 in the amount of $30,000, which was posted as security for the issuance of a temporary restraining order against Valve Dynamics, Inc. It is further

**ORDERED** that Plaintiff shall have judgment against Defendants in the amount of $49,824.00. It is further

**ORDERED** that, pursuant to 28 U.S.C. §§ 1920, 1924, Defendants shall bear Plaintiff's court costs incurred in prosecuting this action. It is further

**ORDERED** that Defendants are enjoined as set out in the Final Judgment.

## APPENDIX I
### PHASE ONE REQUEST
(100% Attorneys' + 100% Legal Assistants' Time)

| Initials | 3/96 | 4/96 | 5/96 | TOTAL |
|---|---|---|---|---|
| WCN | $770.00 (2.8 @ $275) | $7,562.50 (27.5 @ $275) | $39,902.50 (145.1 @ $275) | $48,235.00 |
| SDM | 0 | 0 | $20,064.00 (121.6 @ $165) | $20,064.00 |
| BCM | $196.00 (1.4 @ $140) | $3,402.00 (24.3 @ $140) | $19,796.00 (141.4 @ $140) | $23,394.00 |
| Legal Ass'ts | 0 | $1,339.00 (20.6 @ $65) | $36,704.00 (592 @ $62) | $38,043.00 |
| Monthly Totals | $966.00 | $12,303.50 | $116,466.50 | $129,736.00 |

### PHASE TWO REQUEST
(100% Attorneys' + 0% Legal Assistants' Time)

| Initials | 6/96 | 7/96 | 8/96 | TOTAL |
|---|---|---|---|---|
| WCN | $8,002.50 (29.10 @ $275) | $20,295.00 (73.80 @ $275) | $5,912.50 (21.50 @ $275) | $34,210.00 |
| SD | $11,830.50 (71.70 @ $165) | $8,167.50 (49.50 @ $165) | $3,118.50 (18.90 @ $165) | $23,116.50 |
| BCM | $4,074.00 (29.10 @ $140) | $2,940.00 (21 @ $140) | 0 | $7,014.00 |
| KSS | 0 | $5,166.00 (49.20 @ $105) | $4,788.00 (45.60 @ $105) | $9,954.00 |
| Legal Ass'rs | 0* | 0* | 0* | 0* |
| Monthly Totals | $23,907.00 | $36,568.50 | $13,819.00 | $74,294.50 |

\* No summaries by individual legal assistant or any aggregate totals of legal assistant fees wer provided by Plaintiff.

### PHASE THREE REQUEST
(100% Attorneys' + 100% Legal Assistants' Time)

| Initials | 9/96 | 10/96 | 11/96 | 12/96 | TOTAL |
|---|---|---|---|---|---|
| WCN | $7,095.00 (25.8 @ $275) | $7,700.00 (28 @ $275) | $5,830.00 (21.2* @ $275) | $1,787.50 (6.5 @ $275) | $22,412.50 |
| SDM | $5,857.50 (35.5 @ $165) | $7,128.00 (43.2 @ $165) | $13,183.50 (79.9 @ $165) | $2,161.50 (13.1 @ $165) | $28,330.50 |
| BCM | 0 | 0 | 0 | $294.00 (2.1 @ $140) | $294.00 |
| KSS | $1,501.50 (14.3 @ 105) | $5,344.50 (50.9 @ $105) | $3,286.50 (31.3 @ $105) | $262.50 (2.5 @ $105) | $10,395.00 |
| Legal Ass't | $1,885.00 (29 @ $65) | $3,347.50 (51.5 @ $65) | $558.00 (9 @ $62)** | $242.95 (4.3 @ $56.50)** | $6,033.45 |
| Monthly Totals | $16,339.00 | $23,520.00 | $22,858.00 | $4,748.45 | $67,465.45 |

\* According to the firm's invoice, 8.5 hours were performed at no charge. The Court includes these hours in Mr. Norvell's time before the 50% reduction in order not to penalize Defendant for counsel's own billing judgment considerations.

\*\* Blended rate.

### PHASE FOUR REQUEST
(100% for January; 100% for February)

| Initials | 1/97 | 2/97 | TOTAL |
|---|---|---|---|

| | | | |
|---|---|---|---|
| WCN | $29,609.00 | $54,404.00 | $84,013.00 |
| | (102.1 @ $290) | (187.60 @ $290) | |
| SDM | $8,794.50 | $36,646.50 | $45,441.00 |
| | (53.3 @ $165) | (222.10 @ $165) | |
| BCM | $1,369.50 | $5,320.00 | $6,689.50 |
| | (8.3 @ $165) | (38 @ $140) | |
| KSS | $1,575.00 | 0 | $1,575.00 |
| | (15@$105) | | |
| Legal Ass'ts | $3,976.00 | 0 | $3,976.00 |
| | (71 @ $56)*** | | |
| **Monthly Totals** | **$45,324.00** | **$96,370.50** | **$141,694.50** |

*** Blended rate.

## APPENDIX II

### AWARD for PHASE ONE
#### (50% Attorneys' + 50% Legal Assistants' Time)

| Initials | 3/96 | 4/96 | 5/96 | TOTAL |
|---|---|---|---|---|
| WCN | $385.00<br>(1.4 @ $275) | $3,781.25<br>(13.75 @ $275) | $19,951.25<br>(72.55 @ $275) | $24,117.50 |
| SDM | 0 | 0 | $10,032.00<br>(60.8 @ $165) | $10,032.00 |
| BCM | $98.00<br>(.7 @ $140) | $1,701.00<br>(12.15 @ $140) | $9,898.00<br>(70.7 @ $140) | $11,697.00 |
| Legal Ass'ts | 0 | $669.50<br>(10.3 @ $65) | $18,352.00<br>(296 @ $62) | $19,021.50 |
| Monthly Totals | $483.00 | $6,151.75 | $58,233.25 | $64,868.00 |

### AWARD for PHASE TWO
#### (60% Attorneys' + 0% Legal Assistants' Time)

| Initials | 6/96 | 7/96 | 8/96 | TOTAL |
|---|---|---|---|---|
| WCN | $4,801.50<br>(17.46 @ $275) | $12,177.00<br>(44.28 @ $275) | $3,547.50<br>(12.9 @ $275) | $20,526.00 |
| SDM | $7,098.30<br>(43.02 @ $165) | $4,900.50<br>(29.7 @ $165) | $1,871.10<br>(11.34 @ $165) | $13,869.90 |
| BCM | $2,444.40<br>(17.46 @ $140) | $1,764.00<br>(12.6 @ $140) | 0 | $4,208.40 |
| KSS | 0 | $3,099.60<br>(29.52 @ $105) | $2,872.80<br>(27.36 @ $105) | $5,972.40 |
| Legal Ass'ts | 0* | 0* | 0* | 0* |
| Monthly Totals | $14,344.20 | $21,941.10 | $8,291.40 | $44,576.70 |

\* No breakdown.

### AWARD for PHASE THREE
#### (50% Attorneys' + 50% Legal Assistants' Time)

| Initials | 9/96 | 10/96 | 11/96 | 12/96 | TOTAL |
|---|---|---|---|---|---|
| WCN | $3,547.50<br>(12.9 @ $275) | $3,850.00<br>(14 @ $275) | $2,915.00<br>(10.6* @ $275) | $893.75<br>(3.25 @ $275) | $11,206.25 |
| SDM | $2,928.75<br>(17.75 @ $165) | $3,564.00<br>(21.6 @ $165) | $6,591.75<br>(39.95 @ $165) | $1,080.75<br>(6.55 @ $165) | $14,165.25 |
| BCM | 0 | 0 | 0 | $147.00<br>(1.05 @ $140) | $147.00 |
| KSS | $750.75<br>(7.156 105) | $2,672.25<br>(25.454@$105) | $1,643.25<br>(15.65 @$105) | $131.25<br>(1.25@$105) | $5,197.50 |
| Legal Ass't | $942.50<br>(14.5 @ $65) | $1,673.75<br>(25.75 @ $65) | $279.00<br>(4.5 @ $62)** | $121.48<br>(2.15 @ $56.50)** | $3,016.73 |
| Monthly Totals | $8,169.50 | $11,760.00 | $11,429.00 | $2,374.23 | $33,732.73 |

\* According to the firm's invoice, 8.5 hours were performed at no charge. The Court includes these hours in Mr. Norvell's time before the 50% reduction in order not to penalize Defendant for counsel's own billing judgment considerations.

\*\* Blended rate.

**AWARD for PHASE FOUR**
(75% for January; 100% for February)

| Initials | 1/97 | 2/97 | TOTAL |
|---|---|---|---|
| WCN | $22,208.20 (76.58 @ $290) | $54,404.00 (187.60 @ $290) | $76,612.20 |
| SDM | $6,596.70 (39.98 @ $165) | $36,646.50 (222.10 @ $165) | $43,243.20 |
| BCM | $1,027.95 (6.23 @ $165) | $5,320.00 (38 @ $140) | $6,347.95 |
| KSS | $1,181.25 (11.25 $1–05) | 0 | $1,181.25 |
| Legal Ass't | $2,982.00 (53.25 @ $56)*** | 0 | $2,982.00 |
| **Monthly Totals** | **$33,996.10** | **$96,370.50** | **$130,366.60** |

\*\*\* Blended rate.