**David SEFTON**

v.

**Matthew JEW; Interactive Classifieds Network Corporation, Individually and DBA Http://www.pictureview.com.**

CIV.No. A–00–CA–473JN.

United States District Court, W.D. Texas, Austin Division.

April 24, 2001.

732

Christopher L. Graff, Skjerven Morrill MacPherson, L.L.P., Austin, TX, Kirk N. Sullivan, Foley & Lardner, Los Angeles, CA, for defendants.

## ORDER

NOWLIN, Chief Judge.

Before the Court are Plaintiff's Second Amended Complaint (Clerk's Doc. No. 18) filed 5 January 2001;[1] Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Complaint (Clerk's Doc. No. 17) filed 5 January 2001;[2] Defendants' Motion to Dismiss Second Amended Complaint (Clerk's Doc. No. 20) filed 26 January 2001; Plaintiff's First Amended Response to Defendants' Motion to Dismiss Second Amended Complaint (Clerk's Doc. No. 23) filed 5 February 2001; and Defendants' Reply Brief in Support of Defendants' Motion to Dismiss Second Amended Complaint (Clerk's Doc. No. 24) filed 13 February 2001. Having considered the Motion, Responses, Reply, the entire case file and applicable law, the Court enters the following order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss Second Amended Complaint.

## I. Background

This case involves an intellectual property dispute between two Internet website owners who offer sexually-oriented photographs on their websites to subscribers for

Kent M. Leediker, Austin, TX, Dan Krocker, Houston, TX, for plaintiff.

1. Plaintiff originally filed this action on 3 August 2000. Because Plaintiff's Original Complaint failed to meet the basic pleading requirements of Rules 8, 10, and 11 of the Federal Rules of Civil Procedure, the Court issued an Order on 21 December 2000 requiring Plaintiff to file a revised complaint. Plaintiff has since filed a three-count revised complaint, which he erroneously refers to as a "Second Amended Complaint." In fact, it is Plaintiff's *first* amended complaint filed in response to the Court's 21 December 2000 Order.

2. Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss along with his revised complaint on 5 January 2001. This filing was premature. The Court's December Order indicated that Defendants would have an opportunity to re-urge their original motion to dismiss after Plaintiff filed a revised complaint. Accordingly, Plaintiff should have waited to file a response until Defendants filed their revised Motion to Dismiss.

monthly fees. Plaintiff, David Sefton, is a photographer in Austin, Texas, who owns and operates the adult website, www.texascollegegirls.com. On 24 June 1997, Plaintiff received a copyright registration from the United States Copyright Office (Registration Number VAu 407–976) for a collection of photographs entitled, "Key West Babes, Spring Break 1997." Similarly, Plaintiff's copyright application for his collection of photographic digital images entitled, "College Girls of Austin Texas," has been pending at the United States Copyright Office since 6 June 1997. Plaintiff claims that on or about 14 July 1997, and on subsequent dates thereafter, Defendants, Interactive Classifieds Network Corporation ("ICNC") and Matthew Jew, the company's CEO and President, published Plaintiff's copyrighted photographic images and other intangible property on their adult website without his permission. Plaintiff has filed a three-count complaint against Defendants for copyright infringement under 17 U.S.C. § 501(a), unfair competition, and conversion.

Defendant ICNC is a California corporation located in San Francisco. ICNC offers a "PictureView" service that is accessible on the company's website at www.pictureview.com. PictureView is an application that organizes and indexes photographic files and text posted to Usenet newsgroups, and it is through this service that Defendants allegedly published Plaintiff's intellectual property without his permission.[3] The PictureView service searches the Usenet for postings containing photographic files, stores these photographic files and the text accompanying

them in ICNC's servers, and inserts the photographic files and text into a graphical interface on ICNC's website, making them viewable directly on-line at www.pictureview.com.

Consumers must subscribe to PictureView to gain access to the entire PictureView archive and they may do so on ICNC's website. Once the subscriber provides credit card and billing information to ICNC, the subscriber's service is automatically renewed by ICNC after each billing cycle until the subscriber cancels membership. Paying members must type in a user name and password each time they enter the website to view ICNC's entire PictureView archive. At the time the complaint was filed, ICNC had approximately 695 Texas subscribers.

Defendants have moved to dismiss the action under Rule 12(b)(2) of the Federal Rules of Civil Procedure, claiming that the Court does not have personal jurisdiction over ICNC or its CEO and President, Matthew Jew. Defendants argue that ICNC has no minimum contacts with this forum and that the mere availability of its Internet service in Texas is insufficient to establish jurisdiction over the corporation. Defendants further argue that Matthew Jew, a California resident, has no contacts with Texas, and that Plaintiff's allegations are insufficient to avoid the fiduciary shield doctrine that prevents this Court from assuming jurisdiction over Mr. Jew through ICNC.

Alternatively, Defendants request dismissal under Rule 12(b)(6) for failure to state a claim. First, Defendants argue

---

**3.** The Usenet is a worldwide distributed discussion system on the Internet that consists of numerous "newsgroups," which are typically classified by subject. A substantial number of newsgroups are devoted to sexually explicit material. Each day, thousands of files, including photographic files, are posted to the Usenet by various individual users. The text contained in these postings may be viewed directly on-line via the Usenet, whereas the photographic files must normally be downloaded and viewed through the user's browser or other software.

738

that Plaintiff's state law claims of unfair trade practices and conversion are preempted by the federal Copyright Act. Second, Defendants argue that all of Plaintiff's claims, including the federal copyright claim, are deficiently plead and thus require dismissal.

## II. Personal Jurisdiction

### A. Legal Standards

■ When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994). When, as in this case, the district court rules on the motion without an evidentiary hearing, the plaintiff may satisfy its burden by presenting a prima facie case for jurisdiction. *Felch v. Transportes Lar–Mex SA De CV,* 92 F.3d 320, 326 (5th Cir.1996). In deciding whether the plaintiff has made a prima facie case, uncontroverted allegations in the plaintiff's complaint must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir.1990).

■ A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if 1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and 2) exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999). Because Texas's long-arm statute has been interpreted to extend to the limits of due process, the Court need only determine whether subjecting Defendants to suit in Texas would be consistent with the due process clause of the Fourteenth Amendment. *See Electrosource, Inc. v. Horizon Battery Technologies, Ltd.,* 176 F.3d 867, 871 (5th Cir.1999); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990).

■ The due process clause of the Fourteenth Amendment limits the power of a state to assert personal jurisdiction over a nonresident defendant. Its requirements are satisfied when 1) the nonresident defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and 2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The minimum contacts aspect of the due process analysis can be established through contacts giving rise to general jurisdiction or specific jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A forum may assert general jurisdiction over a nonresident defendant if the defendant's contacts with the forum state are "continuous and systematic." *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868. If a defendant's contacts with the forum state are not sufficient to support general jurisdiction, a defendant may be subject to specific jurisdiction. Specific jurisdiction is established if 1) the defendant purposefully directed his activities at the residents of the forum, and 2) the plaintiff's cause of action arises out of, or is related to, the defendant's contacts with the forum. *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174.

■ The Fifth Circuit has adopted a "sliding scale" approach in determining when to exercise general jurisdiction over a defendant who operates an Internet web-

site without other contacts with the forum state. *Mink v. AAAA·Development LLC,* 190 F.3d 333, 336 (5th Cir.1999). Courts are to evaluate the "nature and quality of commercial activity that an entity conducts over the Internet" before exercising personal jurisdiction. *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). Adopting the reasoning in *Zippo,* the Fifth Circuit has categorized Internet use into a spectrum of three areas. *Id.* At one end of the spectrum, there are situations where a defendant "clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet.'" *Id.* (citing *Zippo,* 952 F.Supp. at 1124). In this situation, personal jurisdiction is proper. *Id.* At the other end of the spectrum, "there are situations where a defendant establishes a passive website that merely advertises on the Internet." *Id.* Personal jurisdiction is not proper with passive websites. *Id.* In the middle of the spectrum, there are situations where a defendant's website allows users to exchange information with a host computer. *Id.* In this middle ground, courts must look to the level of interactivity and the commercial nature of the information on the website to determine whether the exercise of jurisdiction is proper. *Id.*

 If minimum contacts are found to be present, the Court must then decide whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. A court may consider the following factors in determining whether this element of due process is satisfied: 1) the burden on the defendant; 2) the forum state's interests in adjudicating the dispute; 3) the plaintiff's interest in convenient and effective relief; 4) the interstate judicial system's interest in the efficient resolution of controversies; and 5) the states' shared interest in furthering fundamental social policies. *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174 (citing *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). For considerations of "traditional notions of fair play and substantial justice" to preclude the exercise of jurisdiction, a defendant who has purposefully directed his activities at forum residents must present a compelling case that the exercise of jurisdiction would be unreasonable in light of the surrounding circumstances. *Id.* at 477, 105 S.Ct. 2174.

## B. Application

Applying these standards, the Court turns to the merits of Defendants' motion to dismiss for lack of personal jurisdiction. Given that the Defendants assert separate objections to personal jurisdiction, the Court evaluates their individual contacts with the Texas forum in turn.

### 1. Personal Jurisdiction Over ICNC

 Both parties agree that ICNC's only contacts with Texas are through the company's website, www.pictureview.com. Plaintiff asserts that general jurisdiction over ICNC is proper because ICNC falls within the category of companies that clearly do business over the Internet. *See Mink,* 190 F.3d at 336 (holding that personal jurisdiction is proper when a defendant "clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet...'"). In support of this assertion, Plaintiff claims that at least 695 Texas PictureView subscribers have entered into service contracts with ICNC over the Internet, and

that ICNC has "repeatedly and continuously" transmitted digital files over the Internet to those subscribers.

Alternatively, Plaintiff claims that ICNC's website is sufficiently interactive and commercial in nature to justify jurisdiction under the middle category of Internet activity described in *Mink*. *See Mink*, 190 F.3d at 336 (holding that when a defendant's website allows users to exchange information with a host computer, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website). Plaintiff contends that ICNC's website is interactive and commercial in that the site processes credit card information, allows consumers to enter into on-line service contracts, offers customized database searches, allows multiple view options for viewing pictures, and provides e-mail addresses and links for customer service problems. The Court finds that ICNC's website falls within this middle category of Internet use. The level of interactivity and commercial nature of the exchange of information on the website is sufficient to establish minimum contacts with this forum.

Defendants argue that ICNC does not fall into the category of companies that clearly conduct business with Texas residents over the Internet for three primary reasons. First, Defendants claim that ICNC's Texas-related activities are not numerous or significant enough to subject the company to general jurisdiction. They argue that ICNC's website does not target Texas customers and that Texas residents represent only 1.86% of the company's PictureView subscribers. The Court finds this argument unpersuasive. The minimum contacts test focuses on the "nature and quality" of the contacts with the forum, not the quantity of those contacts. *International Shoe*, 326 U.S. at 320, 66 S.Ct. 154; *see also Zippo*, 952 F.Supp. at 1127 (rejecting defendant's argument that only 2% of its Internet news service subscribers were residents of the forum state). Even if ICNC has not actively solicited business in Texas, the fact remains that ICNC has sold PictureView access to approximately 695 Texas subscribers. The company has repeatedly and consciously chosen to sell its services to Texas residents and should therefore have been on notice that it is subject to suit in Texas. *See World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559 (stating that when a corporation " 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State").

Second, Defendants argue that there is no evidence that ICNC has engaged in business transactions with forum residents or entered into contracts over the Internet. *See Mink*, 190 F.3d at 337 (characterizing the spectrum of cases where a defendant clearly conducts business over the Internet as those where the defendant engages in business transactions or enters into contracts over the Internet). The Court finds this argument equally unpersuasive in light of the fact that ICNC has Texas PictureView subscribers. Texas residents subscribe to the PictureView service by providing their credit card and billing information to ICNC on the company's website and being charged a monthly fee to view the PictureView archive. ICNC has clearly performed business transactions and entered into contracts over the Internet with Texas residents if it has Texas subscribers.

Third, Defendants argue that Plaintiff has failed to provide sufficient evidence that ICNC's contracts with Texas residents involve the knowing and repeated transmission of digital files over the Internet. The only admissible evidence Plaintiff offers to support this element of general jurisdiction is Dennis Payne's affidavit.[4] Payne states that ICNC takes binary encoded digital files from Usenet newsgroups, stores them to their own servers, and makes them viewable directly on-line at www.pictureview.com. Payne further states that ICNC's website gives viewers the option to download pictures directly from ICNC's website to their hard drives, which seemingly constitutes the knowing transfer of files. Defendants argue that ICNC does not knowingly transfer files to this forum because it is the users of the Usenet, not ICNC, that control what files are posted onto or downloaded from the PictureView service. Because it is arguable that ICNC's service contracts with Texas residents do not involve the knowing

and repeated transmission of computer files over the Internet, the Court declines to base general jurisdiction on the first category of Internet use described in *Mink*. However, the Court finds that Plaintiff has made a prima facie case for the exercise of general jurisdiction under *Mink*'s middle category of Internet use. The high level of interactivity and the commercial nature of the website are sufficient to establish minimum contacts with this forum.[5]

With regard to the second prong of the due process analysis, Defendants argue that it would be unfair to require ICNC to defend this action in Texas because ICNC has relatively few Texas PictureView subscribers and Plaintiff is the only Texas resident that has a unique interest in this dispute. Defendants also argue that the interstate judicial system's interest in obtaining the most efficient resolution of this dispute would best be served by litigating this suit in California, where ICNC's computer servers are located. The Court

4. Plaintiff has submitted three affidavits containing information regarding the website's mode of operation and level of interactivity: 1) Plaintiff's own affidavit, 2) the affidavit of Leann Collins (a photographer and model), and 3) that of Dennis Payne (a computer consultant). Defendants argue that Plaintiff's affidavits contain inadmissible conjecture and unsupported opinions, and should be stricken in their entirety. Plaintiff asserts in his affidavit, for example, that "[w]ith a Texas customer base of 695 subscribers, on average I would estimate that each customer downloads at least 100 images per month. Therefore there would be 69,500 files transferred in a typical 30 day business cycle. That would equate to 1.6 files for each minute of every day, 24 hours a day." The Court agrees with Defendants that Plaintiff has failed to establish himself and Leann Collins as experts in website interactivity and that both affidavits contain irrelevant material, unsupported opinions, and conjecture. The Court will grant Defendants' motion to strike the portions of the Sefton and Collins affidavits identified in Defendants' Reply Brief in Support of

Defendants' Motion to Dismiss Second Amended Complaint. *See Pedraza v. Jones*, 71 F.3d 194, 197 (5th Cir.1995) (stating that to qualify as an expert, the witness's testimony must be relevant and must rest on a reliable foundation). Defendants' request to strike Dennis Payne's affidavit will be denied.

5. Defendants also make a policy argument opposing the Court's exercise of personal jurisdiction over ICNC. Defendants claim many businesses now have Internet websites with interactive capabilities and that an assertion of general jurisdiction solely on this basis would subject most businesses to personal jurisdiction in every forum, thus "eviscerat[ing] the personal jurisdiction requirements as they currently exist." *Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 115 (D.Conn.1998); · *see also Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F.Supp.2d 448, 449–54 (E.D.Pa.1999). While the Court may agree with Defendants' analysis, the Court is bound by the sliding-scale approach adopted by the Fifth Circuit in *Mink*.

finds that ICNC has failed to present a compelling case that the exercise of jurisdiction would be unfair or unreasonable. Texas has a strong interest in adjudicating disputes involving the alleged infringement of copyrights owned by Texas residents. The Court must also give due regard to Plaintiff's choice of forum and his interest in convenient and effective relief. These concerns outweigh the burden of requiring ICNC to defend the suit in Texas, especially when ICNC consciously chose to conduct business with Texas residents and to pursue profits from the actions now in question. "The Due Process Clause is not a 'territorial shield to interstate obligations that have been voluntarily assumed.'" *Zippo*, 952 F.Supp. at 1127 (citing *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174). Accordingly, the Court finds that ICNC is subject to personal jurisdiction in this forum.[6]

## 2. Personal Jurisdiction Over Matthew Jew

■ In contrast to ICNC, this Court does not have general jurisdiction over Defendant Matthew Jew because Mr. Jew does not have continuous and systematic personal contacts with Texas. *See Helicopteros*, 466 U.S. at 414–15, 104 S.Ct. 1868. Mr. Jew is a California resident, who has never traveled to Texas or personally conducted business in Texas. Because Mr. Jew has no personal contacts with this forum, the Court lacks general jurisdiction over Mr. Jew in his individual capacity.

Plaintiff claims that Matthew Jew is subject to the specific jurisdiction of this forum. In support of this assertion, Plaintiff argues 1) that "Defendants" purposefully availed themselves of the financial benefits of doing business in Texas by accepting PictureView subscriptions from Texas residents, and 2) that Plaintiff's claims arise out of this forum because the financial harm that "Defendants" inflicted occurred in Texas. Plaintiff also alleges that Matthew Jew is individually subject to personal jurisdiction because he "personally received letters pertaining to copyright infringement, failed to remove copyrighted material from his web site, thereby willfully committing torts against Plaintiff."

Defendants correctly conclude that Plaintiff has failed to allege any wrongful act that Mr. Jew personally committed against Plaintiff in this forum to justify specific jurisdiction over Mr. Jew in his individual capacity. *See Burger King*, 471 U.S. at 486, 105 S.Ct. 2174 (holding that specific jurisdiction is proper if the defendant purposefully directed his activities at the residents of the forum, and the plaintiff's cause of action arises out of, or is related to, the defendant's contacts with the forum). Plaintiff makes the allegation that Mr. Jew personally received letters pertaining to copyright infringement and failed to remove copyrighted material from his website, but Plaintiff does not allege that Mr. Jew committed those actions in or directed to this forum. Rather, Plaintiff's Complaint merely states that the Defendants, collectively, infringed Plaintiff's works. There are no facts alleged to demonstrate what Mr. Jew did personally to infringe Plaintiff's works apart from merely being a corporate officer of ICNC. In short, Plaintiff has failed to meet his burden of showing that Mr. Jew, in his individual capacity, is subject to the specific jurisdiction of this forum.

---

**6.** Because ICNC is subject to general jurisdiction, the Court does not address the question of specific jurisdiction.

Defendants further argue that Plaintiff's allegations are insufficient to avoid the fiduciary shield doctrine that prevents this Court from assuming jurisdiction over Mr. Jew through ICNC. The Court agrees. The fiduciary shield doctrine holds that an individual's transaction of business within a state solely as a corporate officer does not create personal jurisdiction over that individual, though the state may have personal jurisdiction over the corporation. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985). Although the general rule is that jurisdiction over a corporate officer cannot be predicated upon jurisdiction over a corporation, courts within the Fifth Circuit have recognized two exceptions to the fiduciary shield doctrine. First, courts may disregard the corporate form and exercise jurisdiction over an individual officer if the corporation is the "alter ego" of the officer.[7] *Stuart*, 772 F.2d at 1197. Second, the court may exercise personal jurisdiction over an officer who allegedly committed an intentional tort directed at the forum state. *See, e.g.*, *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546–47 (5th Cir.1985) (jurisdiction proper because fraud and breach of contract alleged); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189–90 (5th Cir.1984) (jurisdiction proper because tortious interference with contract alleged).

Plaintiff has failed to establish that either exception to the fiduciary shield doctrine applies in this case. Plaintiff makes the conclusory allegation that "ICNC . . . is an alter ego of Matthew Jew." However, Plaintiff alleges no facts to support that conclusion. It is the plaintiff's burden to prove facts necessary to support the existence of jurisdiction. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 494 (5th Cir.1989). A conclusory statement that Mr. Jew and ICNC are alter egos is not sufficient to attribute ICNC's contacts with Texas to Mr. Jew. *Stuart*, 772 F.2d at 1198 (holding that although items in the record evinced a blurring of the distinction between the officer's actions in his individual capacity and the actions of the corporation, plaintiffs failed to prove facts demonstrating that the corporation was but a façade for the officer's individual activities).

Plaintiff also attempts to invoke the intentional tort exception to the fiduciary shield doctrine by making a conclusory allegation that Mr. Jew "committed intentional torts in the corporate name and for his benefit making him a tort-feasor." However, Plaintiff offers no facts to explain what intentional torts Mr. Jew committed or how such intentional torts stand apart from the infringement allegedly committed by ICNC.[8] The Court finds that Mr. Jew's only relevant contacts with Texas are in his capacity as a corporate officer of ICNC, and that the fiduciary shield doctrine prevents this Court from assum-

---

7. Courts may consider the following factors in determining whether a corporation is the alter ego of an officer: 1) the corporation is undercapitalized; 2) without separate books; 3) its finances are not kept separate from individual finances; 4) the corporation is used to promote fraud or illegality; 5) corporate formalities are not followed; or 6) the corporation is merely a sham. *Stuart*, 772 F.2d at 1197 (citing *Lakota Girl Scout Coun-*

cil, Inc. v. Havey Fund–Raising Management, Inc., 519 F.2d 634 (8th Cir.1975)).

8. In support of his jurisdiction argument, Plaintiff argues that Mr. Jew owns and controls ICNC, and thus has vicarious liability. Although a vicarious theory may be a basis for *liability* against Mr. Jew, it is not a basis for asserting jurisdiction over him. *See Tinasakti Saktides v. Cooper*, 742 F.Supp. 382, 386 (W.D.Texas 1990).

ing personal jurisdiction over Mr. Jew.[9]

## II. Failure to State a Claim Under Rule 12(b)(6)

### A. Legal Standards

In considering a motion to dismiss a complaint for failure to state a claim, the Court may not look beyond the pleadings. *Mahone v. Addicks Utility Dist. Of Harris County,* 836 F.2d 921, 935 (5th Cir.1988). The Court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor. *Vulcan Materials Co. v. City of Tehuacana,* 238 F.3d 382, 387 (5th Cir. 2001). However, the plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992). Complaints "'must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (citing 3 Wright & Miller § 1216, at 156–59). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Although dismissal for failure to state a claim is generally disfavored, there are times when a court should exercise its power to dismiss a complaint under Rule 12(b)(6). *Mahone,* 836 F.2d at 927. For example, dismissal is appropriate if the complaint itself shows a bar to relief because it is then "beyond doubt" that no set of facts will allow plaintiff to prevail. *Id.* Rule 12(b)(6) dismissal is also appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995); *see also Campbell,* 43 F.3d at 975.

### B. Application

#### 1. Preemption of State Law Claims

 Defendants argue that Plaintiff's state law claims of unfair trade practices and conversion are preempted by the federal Copyright Act and that this bar to relief requires dismissal of the claims under Rule 12(b)(6). State law causes of action that fall within the scope of the federal Copyright Act are subject to preemption. *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 785 (5th Cir. 1999). Section 301 of the Copyright Act sets forth two conditions that must be satisfied for preemption of a right under state law to occur: 1) the work in which the right is asserted must come within the subject matter of copyright as defined in sections 102 and 103 of the Copyright Act;[10] and 2) the right that the author

---

**9.** The Court need not discuss the fairness prong of the due process analysis because Plaintiff has failed to establish Matthew Jew's minimum contacts with this forum. The Court notes, however, that Texas does not have a compelling interest in adjudicating Plaintiff's claims against Mr. Jew because Plaintiff has failed to allege any particular wrongful act that Mr. Jew personally perpetrated in this forum.

**10.** Section 102 of the Copyright Act provides copyright protection to "original works of authorship fixed in any tangible medium of expression," including: 1) literary works; 2) musical works, including any accompanying words; 3) dramatic works, including any accompanying music; 4) pantomimes and choreographic works; 5) pictorial, graphic, and sculptural works; 6) motion pictures and other audiovisual works; 7) sound recordings; and 8) architectural works. 17 U.S.C. § 102(a) (2000). Section 103 states that

seeks to protect must be equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 of the Copyright Act.[11] 17 U.S.C. § 301(a) (2000). The second condition requires a comparison of the nature of the rights protected under federal copyright law with the nature of the state rights for which the plaintiff seeks protection. *Alcatel*, 166 F.3d at 787. If these rights are equivalent, then the state law cause of action is preempted. *Id.* Courts use the "extra element" test to evaluate the equivalency of rights. *Id.* Under this test, if the defendant's alleged acts would violate both state law and federal copyright law, then the state right is deemed "equivalent to copyright." *Id.* However, if one or more qualitatively different elements are required to constitute the state cause of action, then the state claim is not preempted. *Id.*

Defendants argue that the first condition for preemption is satisfied because all of Plaintiff's state law claims are based on his photographs, which expressly fall under the definition of copyrightable works in 17 U.S.C. § 102(a). Defendants argue that the second condition for preemption is met because none of Plaintiff's state law claims require proof of an extra element that Plaintiff is not already required to prove for copyright infringement. The Court will now evaluate each of Plaintiff's state law claims in turn.

**a) Unfair Trade Practices and Unfair Competition**

 Plaintiff alleges that on various dates after 14 July 1997, Defendants engaged in unfair trade practices and unfair competition. His "damages" allegedly include "dilution, disparagement, misappropriation, passing off, tarnishment, conversion of service mark, dilution of common law trademark, and other intangible rights." Under Texas law, "unfair competition" is the umbrella for all statutory and non-statutory causes of action arising out of business conduct that is contrary to honest practice in industrial or commercial matters. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir.1974). The "damages" of which Plaintiff complains are various independent causes of action under the broad category of unfair competition. *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex.App.-Waco 1993, writ denied) (stating that "[w]ithin the broad scope of unfair competition are the independent causes of action such as trade-secret law, 'palming off' or passing off, and misappropriation, to name only a few"); *see also Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F.Supp. 543, 557–58 (N.D.Tex.1997).

To support his unfair competition claims, Plaintiff alleges the following facts: 1) Defendants published Plaintiff's e-mail name, wild@jump.net, 2) Defendants published all e-mail addresses to Plaintiff's domain name, texascollegegirls.com, 3) Defendants published Plaintiff's service marks, wildchild.com and texascollegegirls.com; and 4) Defendants used Plaintiff's marketing text. These acts allegedly occurred on the same dates as the copyright infringements,

---

"compilations and derivative works" fall within the subject matter of copyright. 17 U.S.C. § 103 (2000).

11. Section 106 of the Act provides that the owner of a copyright has the exclusive rights to do and to authorize any of the following:

1) reproduce the copyrighted work in copies; 2) distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and 3) in the case of literary and pictorial works, to display the copyrighted work publicly. 17 U.S.C. § 106 (2000).

as well as other dates that Plaintiff does not specify.

The Court finds that Plaintiff's unfair competition claims are not preempted by the Copyright Act because the first condition for preemption is not met. The works that are the subject of Plaintiff's unfair competition claims do not fall within the subject matter of the Copyright Act. *See* 17 U.S.C. §§ 301,102. E-mail names, e-mail addresses, and service marks are not copyrightable material even if they are used to identify a copyrighted work. *See Brown v. Ames*, 201 F.3d 654, 658 (5th Cir.2000) (stating that names and likenesses do not become copyrightable simply because they are used to identify the source of a copyrighted work.) With the possible exception of Plaintiff's "marketing text," none of the intellectual property upon which Plaintiff bases his unfair competition claims clearly meets the definition of copyrightable material as defined by 17 U.S.C. § 102.[12] The Court will therefore deny Defendants' request to dismiss Count 2 on the basis of preemption.

### b) Conversion

Plaintiff alleges that Defendants "converted [P]laintiff's photographic images, by displaying Plaintiff's business dressing, marketing program, service mark, and common law trademark [sic], text, email address [sic] on defendant's site." Plaintiff alleges that these acts occurred on the same dates as the copyright infringement as well as other dates to be ascertained during discovery. Defendants contend

that Plaintiff's conversion claim is preempted because 1) the claim is based on Plaintiff's photographs, which expressly fall under the definition of copyrightable works in 17 U.S.C. § 102; and 2) the claim does not require proof of an extra element that Plaintiff is not already required to prove for copyright infringement.

The Court finds that Plaintiff's conversion claim meets both conditions for preemption. The first condition for preemption is satisfied because the works in which Plaintiff asserts his rights are his copyrighted photographs, which by definition fall within the subject matter of copyright. 17 U.S.C. § 102. The second condition is met because Plaintiff has not alleged conduct by Defendants to support his conversion claim that is qualitatively different from the conduct alleged to support his copyright infringement claim. *See Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995). Plaintiff's complaint sets forth only one set of operative facts: the PictureView service searched the Usenet for postings containing photographic files, stored Plaintiff's photographic files and the text accompanying those files on ICNC's servers, and made Plaintiff's photographic files and the accompanying text viewable directly on-line at www.pictureview.com. Plaintiff attempts to characterize ICNC's publication of the text contained in his Usenet postings as an act distinct from ICNC's publication of Plaintiff's photographic files. However, these are not separate acts; the PictureView service is an automated software program

---

12. The Fifth Circuit has held that passing off and misappropriation claims may be subject to preemption by the Copyright Act. *See Alcatel*, 166 F.3d at 789; *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995). However, unlike the case at hand, the plaintiffs in both of those cases framed their claims in the context of copyrighted or expressly copyrightable material, thus satisfying the first prong of the preemption analysis. *See Alcatel*, 166 F.3d at 786 (defendant's offense was the use of plaintiff's copyrighted firmware, operating system software, and manuals); *see also Daboub*, 42 F.3d at 287 (plaintiff's state claims "center[ed] on the improper copying of [a] song, an interest clearly protected by the Copyright Act").

that simultaneously publishes photographic files and text posted to the Usenet. Plaintiff has alleged no facts beyond those needed to support his copyright claim to establish an extra element needed to avoid preemption. *See Daboub*, 42 F.3d at 289 (holding that Plaintiff's state law theories of misappropriation, disparagement, and conversion were preempted because the elements in plaintiff's state law action involved elements that would not establish qualitatively different conduct by the defendants than the elements for an action under the Copyright Act). The Court will therefore grant Defendants' Motion to Dismiss Plaintiff's conversion claim on grounds of preemption.

## 2. Failure to State a Claim

Defendants argue that Plaintiff's Second Amended Complaint requires dismissal under Rule 12(b)(6) because Plaintiff has failed to allege sufficient facts to state any valid claim.

### a) Copyright claim

 First, Defendants argue that Plaintiff has failed to state a valid copyright infringement claim. Complaints in copyright infringement actions must comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure, which governs pleadings generally. 5 .Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1237, p. 279 (2d ed.1990). However, in applying Federal Rule 8 to copyright infringement cases, some courts have imposed a heightened pleading requirement. *See, e.g., Hartman v. Hallmark Cards, Inc.*, 639 F.Supp. 816, 820 (W.D.Mo.1986); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y.1992). Under this heightened standard, a properly plead copyright infringement claim must allege: (1) which specific original works are the

subject of the claim, (2) that the plaintiff owns the copyright, (3) that the works have been registered in compliance with the copyright laws, and (4) by what acts and during what time the defendant has infringed the copyright. *Kelly*, 145 F.R.D. at 36. The Court will evaluate Plaintiff's copyright claim using this standard.

 Defendants claim that Plaintiff has failed to plead three of the four requisite elements of his copyright claim. First, Defendants argue that Plaintiff has not specified which of his photographic images were allegedly infringed. Defendants point to the fact that Plaintiff has failed to provide a comprehensive list or complete set of copies of all the photographs at issue. While it is true that Plaintiff has not identified every photograph allegedly infringed, Plaintiff has provided copies of a portion of the works at issue and copies from ICNC's website that show the alleged infringement. The Court finds that Defendants have sufficient notice of Plaintiff's copyright claim based on the portion of works identified in Plaintiff's complaint.

 Second, Defendants claim that Plaintiff has failed to plead that all of the allegedly infringed works have a copyright registration. Copyright registration is a jurisdictional prerequisite to filing a copyright infringement suit; failure to plead registration requires dismissal of the case. *See Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir.1997). Plaintiff has provided the copyright registrations for his photographic collections, "Key West Babes, Spring Break 1997" and "College Girls of Austin Texas," but has not attached the exemplars of the actual photographs submitted to the Copyright Office along with those registration forms.[13] De-

---

**13.** Registration is still technically pending for

Plaintiff's work "College Girls of Austin Tex-

fendants argue that they have no way of knowing what specific photographs were included with those registrations and whether those registrations cover the works alleged in the complaint.

The Court finds Defendants' registration argument unpersuasive. Even if Plaintiff had attached exemplars of all the pictures submitted to the Copyright Office, the Court would still be required to accept as true Plaintiff's assertion that those were in fact Plaintiff's copyrighted images. Plaintiff alleged in his complaint that he has complied with all copyright laws and that he owns all rights to the photographic and digital images that are the subject of this suit. Therefore, he has sufficiently plead the registration of the images at issue.[14] *See* 5 Wright & Miller § 1237, at 282–83 (stating that complaints alleging present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant, may be held sufficient under the Federal Rules of Civil Procedure).

Third, Defendants argue that Plaintiff's statement that the infringement occurred "[o]n or about July 14, 1997...[and] periodically at different times after that date" is not sufficiently specific because there is no explanation of what works were purportedly infringed during that time. In Exhibit 4 of the revised complaint, Plaintiff provides printed pages from Defendants' website show-ing a portion of the images allegedly infringed. Each page contains the date it was printed from Defendants' website, ranging from 30 September 1998 to 3 November 1998. The Court finds that Plaintiff has met the requisite level of specificity.

Defendants further contend that a more complete statement of when the infringement occurred is necessary to determine whether the copyright claim, filed 3 August 2000 (more than three years after 14 July 2000), is time-barred by the three-year statute of limitations for copyright claims. 17 U.S.C. § 507(b) (2000). In light of the three-year limitations period governing actions under the Copyright Act, the Court finds that any alleged infringement occurring prior to 3 August 1997 is time-barred.[15]

### b) Unfair Trade Practices and Unfair Competition

Defendants contend that Plaintiff's complaint fails to state any valid claims of unfair competition. Specifically, Defendants argue that Plaintiff has failed to allege sufficient facts to support his passing off, misappropriation, disparagement, dilution, and conversion theories.

### 1) Passing Off

To establish "passing off" under Texas common law, a plaintiff must allege:

---

as." The Fifth Circuit has held that statutory registration requirements are met if an application, fee and deposit have been submitted to the Copyright Office. *See Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.,* 226 F.3d 387, 393 (5th Cir.2000). Plaintiff has provided a copy of his registration application and proof of receipt by the Copyright Office. The Court therefore assumes that Plaintiff has complied with registration formalities.

14. Copyrights obtained for collections of works extend to each individual work in the collection even though the names of each work are not expressly listed in the copyright registration. *Szabo v. Errisson,* 68 F.3d 940, 944 (5th Cir.1995).

15. Plaintiff requests that the Court toll part of his infringement claim "due to bureaucratic delays at the copyright office." With no further explanation as to why the statute of limitations should be tolled, the Court declines to do so.

1) that the defendant is passing off his goods or services as those of the plaintiff by virtue of a substantial similarity between the two; and 2) that this will likely lead to confusion on the part of potential customers. *See Webbworld,* 991 F.Supp. at 557 (citing *Volkswagenwerk Aktiengesellschaft v. Rickard,* 492 F.2d 474, 478 (5th Cir.1974)); *Line Enterprises, Inc. v. Hooks & Matteson Enterprises, Inc.,* 659 S.W.2d 113, 117 (Tex.App.—Amarillo 1983, no writ).

■ Plaintiff alleged that Defendants published his e-mail name, e-mail addresses to his domain name, service marks, and marketing text without his permission. Plaintiff further alleged (under the label of "conversion") that Defendants' display of Plaintiff's business dressing, marketing program, service mark, common law trademark, text, and e-mail addresses, implied that Plaintiff had given Defendants license to use his intangible property. Plaintiff has alleged no facts to establish that Defendants are passing off their goods or services as those of the Plaintiff, causing confusion on the part of potential customers. Plaintiff has merely alleged that the Defendants' copied Plaintiff's works from the Usenet and made them viewable on www.pictureview.com. The Court finds that Plaintiff has failed to allege facts suggesting that Defendants are trying to "pass off" their website or services as belonging to Plaintiff, and that the complaint lacks allegations regarding required elements necessary to obtain relief. *Blackburn,* 42 F.3d at 931; *see also Campbell,* 43 F.3d at 975. Accordingly, the Court will grant Defendants' request to dismiss Plaintiff's passing off claim for failure to state a claim.

**2) Misappropriation**

■ To establish a misappropriation claim under Texas law, Plaintiff must allege the following four elements: 1) creation of the plaintiff's product through extensive time, labor, skill, and money; 2) defendant's use of that product in competition with plaintiff; 3) plaintiff thereby gaining a special advantage in that competition because the defendant is burdened with little or none of the expense incurred by the plaintiff; and 4) commercial damage to the plaintiff. *See Alcatel,* 166 F.3d at 788.

Plaintiff alleged that he developed name recognition, service marks, intellectual property rights, and other intangible chattel rights at significant expense and labor. Plaintiff further alleged that Defendants engaged in unfair competition against Plaintiff, and that Defendants received a "free ride" and unjust enrichment through their acts. In addition, Plaintiff stated that he has sustained damages as a result of Defendants' unfair business practices. The Court finds that Plaintiff has plead the basic elements of a misappropriation claim under Texas law. Therefore, Defendants' request to dismiss the claim under Rule 12(b)(6) will be denied.

**3) Disparagement**

■ The elements of a disparagement claim under Texas law are: 1) publication by the defendant of disparaging words, 2) falsity, 3) malice, 4) lack of privilege, and 5) special damages. *See Hurlbut v. Gulf Atlantic Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987). The Court finds that Plaintiff has failed to allege any of these elements. Defendants correctly contend that this is a dispute over photographic works; no disparaging, false, and malicious publications by Defendants are at issue.[16] The Court finds that Plaintiff's disparage-

---

**16.** In addition to the photographic works at issue, Plaintiff has alleged that Defendants published Plaintiff's service marks, common law trademark, e-mail name, e-mail addresses

ment claim lacks required elements necessary to obtain relief and will grant Defendants' request for dismissal of this claim.

### 4) Dilution of Common Law Trademark

▇▇▇▇ The Texas Anti–Dilution Statute provides: "[a] person may bring an action to enjoin an act likely to injure a business or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services." TEX. BUS. & COM. CODE ANN. § 16.29 (West 2001). Dilution arises when a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that the subsequent user will lessen the uniqueness of the prior user's mark. *See E.J. Gallo Winery v. Spider Webs Ltd.*, 129 F.Supp.2d 1033, 1037 (S.D.Tex. 2001) (citing *Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 450 (5th Cir. 1973)). To establish a dilution claim under Texas law, a plaintiff must show 1) ownership of a distinctive mark; and 2) a likelihood of dilution. *See E.J. Gallo Winery v. Spider Webs Ltd.*, 129 F.Supp.2d 1033, 1037 (S.D.Tex.2001) (interpreting TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2001). Distinctiveness can be proved through the uniqueness of the mark or by showing that the mark has acquired a secondary meaning. *Id.* A trademark has a secondary meaning if it has become so associated in the mind of the public with that entity or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others. *Id.* A likelihood of dilution may be shown under two different theories: "blurring" or "tarnishment." *Id.* Dilution by blurring

occurs when there has been "a diminution in the uniqueness and individuality of the mark." *Id.* (quoting *Pebble Beach Co. v. Tour 18 I. Ltd.*, 942 F.Supp. 1513, 1564 (S.D.Tex.1996), *aff'd*, 155 F.3d 526 (5th Cir.1998). Dilution by tarnishment requires "an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark." *Id.* (quoting *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir.1997), *cert. denied*, 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)).

Defendants argue that Plaintiff's dilution of common law trademark should be dismissed for failure to state a claim because Plaintiff fails to identify 1) what his purported trademark is; and 2) what marks Defendants used that were confusingly similar. The Court agrees that Plaintiff has failed to state a dilution claim. Plaintiff has not identified his distinctive mark, nor has he alleged facts to establish the likelihood of dilution. Plaintiff states that his "business name has a secondary meaning" but he never identifies that business name or qualifies that name as a distinctive mark. Plaintiff also states that his "damages" include "tarnishment," but he alleges no facts to support a tarnishment theory of dilution. The Court will grant Defendants' motion to dismiss Plaintiff's dilution claim.

### 5) Conversion of Service Mark

▇▇▇▇ As part of his unfair competition claim, Plaintiff asserts that Defendants converted the service marks, wildchild.com and texascollegegirls.com. The Court finds that Plaintiff has failed to state a valid claim of conversion. Under Texas law, conversion is established if: 1) the plaintiff owned, had legal possession of, or was entitled to property; 2) the defendant

---

to his domain name, and marketing text. However, the Court assumes that Plaintiff

does not intend to argue that his own products disparaged him.

assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and 3) the defendant refused the plaintiff's demand for return of the property. *Ojeda v. Wal–Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex.App.-San Antonio 1997, writ denied). In general, the tort of conversion is limited to tangible property. *See Ciccorp., Inc. v. Aimtech Corp.*, 32 F.Supp.2d 425, 430 n. 9 (S.D.Tex.1998). However, Texas law does recognize conversion claims based on intangible property if the underlying intangible right has been merged into a document, and that document has been converted. *See Pebble Beach Co. v. Tour 18 I. Ltd.*, 942 F.Supp. 1513, 1569 (S.D.Tex.1996) *aff'd*, 155 F.3d 526 (5th Cir. 1998) (citing *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex.1982)); *see also Neles–Jamesbury, Inc. v. Bill's Valves*, 974 F.Supp. 979, 982 (S.D.Tex.1997) (holding that Texas law does not recognize claims of trademark conversion if plaintiff fails to claim that defendant converted a document representing plaintiff's intangible rights).

Plaintiff has given the Court no indication that his service marks have been merged into a document, nor has Plaintiff alleged that Defendants converted any such document. The Court concludes that Plaintiff has failed to state a claim for conversion of service mark under Texas law because he has failed to allege that Defendants converted a document representing his intangible rights. *Neles–Jamesbury*, 974 F.Supp. at 982; *see also CICCorp.*, 32 F.Supp.2d at 430 n. 9 (refusing to extend liability for conversion to alleged unlawful dominion and control over intangible internet webpage address).[17]

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Second Amended Complaint (Clerk's Doc. No. 20), is GRANTED IN PART and DENIED IN PART. The Court DENIES Defendants' Motion to Dismiss for lack of personal jurisdiction over ICNC; GRANTS Defendants' Motion to Dismiss for lack of personal jurisdiction over Matthew Jew; GRANTS Defendants' Motion to Strike the portions of the Sefton and Collins affidavits identified in Defendants' Reply Brief; DENIES Defendants' Motion to Strike the Payne affidavit; DENIES Defendants' Motion to Dismiss Count 2 on grounds of preemption; GRANTS Defendants' Motion to Dismiss Count 3 on grounds of preemption; GRANTS Defendants' Motion to Dismiss Plaintiff's passing off, disparagement, dilution, and conversion claims in Count 2 on grounds of failure to state a valid claim; and DENIES Defendants' Motion to Dismiss Plaintiff's misappropriation claim in Count 2.

---

17. Plaintiff's conversion claim in Count 3 is dismissed on grounds of preemption. Therefore, the Court does not address Defendants' argument that the claim should be dismissed for failure to state a valid claim.